Good morning. May it please the Court, Carrie Bader for Rene Acosta-Martinez, the appellant in this case. As your Honours are aware, Mr. Acosta was convicted of illegal re-entry into the United States after deportation. We entered into a conditional plea with the government on that case. And we have been contesting the legality of one element of that crime, the prior deportation, that occurred in 1997, which is the basis of the appeal today. And as I've reviewed all the materials in this case, the briefs and all of the discovery, I would boil down the main issues for the Court that I believe are relevant, or the false claim of U.S. citizenship that would, if found true, would bar Mr. Acosta permanently from the United States. Let me ask you this question. Your client was not charged by the Immigration Service in 1997 with inadmissibility by claiming false citizenship, correct? He wasn't charged with that crime. He just made the statements, right? He wasn't charged in criminal court with that crime. Right. Whether, I believe it was on the OSC, although I'm not quite sure, actually. Well, how does that bear on his eligibility for relief from removal at that time? And I think, I mean, one of the centerpiece cases is Pichardo on that point. Does it matter whether he was charged with a crime on that as opposed to being discharged by the Immigration Service? No, I think if he's in the Immigration Court, a false claim of citizenship can automatically bar him from the United States permanently. However, there are factual defenses to that. There's one defense is a quick withdrawal of your false claim of United States citizenship. In this case, we didn't argue it, but we could have argued it. Even if he had said that, you know, he quickly withdrew that statement. But that was not our defense in this case. Our defense is that he didn't say that. He was with somebody else at the port of entry with another young man that had just been released from prison, but that morning they'd been deported and they were walking back over. So how do we get around the district judge's finding that the district judge didn't believe your claim, right? I mean, why don't we have to give some deference to that? Well, the district court wasn't the body that viewed Mr. Acosta. He wasn't even there. That's one thing. And I don't think, I think the whole case should be remanded back to the Immigration Court. In all fairness to Mr. Acosta, I don't think the district court eight years, seven or eight years later, had any right to make the credibility findings or the factual findings. The other main point to that is that there were no factual findings barely made in that court, in the Immigration Court. The record was never developed. The immigration judge is required to fairly review the record, and the record was not brought to the IJA's attention, the immigration judge's attention. There was a video of sworn oath by my client where he stated, I never made a false claim of U.S. citizenship. He said, I did enter the country illegally. I tried to. He admitted that. He indicted himself on that. But he said in the sworn video that the government had and did not show to the IJA or tell the IJA about, that he had said, I never said claim to be a U.S. citizen. I don't think we're allowed to ignore that record that should have been developed. Excuse me. You had hearing in the district court on your motion to dismiss, and this gentleman testified. He provided declarations. A declaration in which he made the assertions that you now recount here in front of us, that he had changed his assertions. And the district court, in making its credibility finding, was not looking to decide whether he was credible in front of the IJA, but whether or not he was credible in the United States district court. And if he says he's a liar right here in front of me in this district court, and I don't believe him, and I believe that the truth is that he asserted the truth when he asserted under oath before the IJA that he was a U.S. citizen, isn't that the end of this case? No, I don't think it is, Your Honor, because I really think the case needs to be remanded to the body where this occurred so that the record could be developed, because the district court is supposed to review the record that doesn't really exist in the immigration court, because the record was never developed by the IJA or the government. And there's no onus on the respondent, Mr. Acosta, to create their own record. But if you assume that the district court is supposed to make these credibility findings years later... No, I'm not. I'm expecting the district court to make a credibility finding on the affidavit that was presented to it, and it has to decide, do I believe this affidavit or not? And the district judge says, I don't, and I don't because this guy's been convicted of a couple crimes, including one on another occasion of making a false claim of being a U.S. citizen, am I right? He did say that. And the district judge has, what, two convictions, two convictions that go to his credibility, plus the record that he has from the IJA, plus what he hears in the courtroom, and he has to decide this man's motion to dismiss. And in deciding it, he says, I don't believe the guy. Within the immigration court, there's standards to be used in making credibility assessments. First of all, the person is supposed to be put on notice. Mr. Acosta wasn't put on notice. We'll let that go at this point. But the judge is supposed to have cogent reasons for why he doesn't believe the respondent. Which judge? The immigration judge, but I would impute that to... We're not reviewing the immigration judge's finding of credibility. We're reviewing the district court. Well, if we look at that on page 490 and 489 of the excerpt of record provided by the defense, the judge says the defendant claims that at some point in time an unidentified INS agent told him, no matter what, you're going to get deported, so answer what they want to hear in court and get it over with. All the district court says is the court does not find this allegation to be credible. And he doesn't say why. Under our circuit, you can't just have your personal speculation giving the basis for denying somebody's credibility in the court of law. He then says that Mr. Acosta did not need discovery to raise any of these facts. Why is he not entitled to discovery? We fought long and hard over this to get this video. This video may have saved this young man's life. He's 21 years old. He's being counseled by INS agents. He never had a lawyer telling him. He was being told, you're going out of here. You have no chance of staying. You might as well just get it over with because if you don't, you're going to sit in immigration custody. And another reason to remand this is to have an immigration expert come in who would opine, and I've heard this routinely, that these young people are counseled like this constantly to just give up and get out of custody. I did talk to another immigration specialist. I asked her, why would somebody say this, to get out of custody? But these are conclusory statements. I don't think the district court is. Let me take you back to one of your other claims, I think. You also argue that your client was eligible for Section 212H relief at the time of this 1997 removal hearing. Yes. Is that correct? Yes. This is going to be a mouthful, but I had to write this. But 212H, and I'm quoting from it, is a waiver of subsections A2, capital A, I, 1, 2, B, D, and E. Your client was charged with inadmissibility under A6. How would he have been eligible for a 212H waiver? The 212H waiver, if I can answer your question, I'm not sure I will. I'll try. But it's needed to wipe out the felony conviction he had. But how could he have been eligible? I don't see how it could have been. He would have needed to simultaneously adjust his status, which is another major issue in this case. And there was a visa available. But he wasn't married to the woman that he wants to try to adjust status with. Is that correct? That's correct. So how is he eligible for that? I'm just not seeing how he could have qualified here. He's got a number of problems. It troubles me, but as I read the discovery last night on page 382 of the excerpt of record, in his mother's application for SAW, I think it was SAW she applied, you'll see that her documents were filed in Laguna Niguel. Now, Laguna Niguel is the exact place where the Salazar case occurred, where one person, one, was responsible at the INS for destroying 90,000 documents of people who were applying for status in the United States. We don't know where these documents are. That's why I asked the district court to let me have the immigration expert opine that these documents are easily lost, they could have been made. There's other indicia of evidence that I've already pointed out that she did, may have made an application for them because these were kids. They were all under the age of 18. How long ago was this? In 1988, and at the time, Rene was 12 years old, and his sisters were about five and six or something like that. But she indicated on her application, as you'll see in the excerpt of record, that she had put their birth certificates as supporting documents in support of her application, so they may well have been made. But the expert opines that the petitions for visas aren't necessarily in the A files. They can be in computers. It had been so old. Even his grandfather may have grandfathered them in with his application in 1975 or 76 when they applied for status because they put Hortensia, the mom, as one of the derivative applicants. So we don't know. Well, thank you, Counsel. Your time has expired. Okay. Thank you. You'll hear from the government now. Good morning. May it please the Court. Michael Crowley on behalf of the United States. I think the adequate way to look at this the proper way is there are multiple reasons why the district court judge's affirmation of the deportation is satisfactory, and it should be affirmed. The first one has been discussed, and it is a separate bar under 212A6C2. If a false claim to U.S. citizenship is made to gain a benefit under the Immigration and Nationality Act, that is a complete bar that's non-waivable. Does it matter that he wasn't charged with a crime as in, I think, Fischardo? No, Your Honor. And if you actually look at the immigration judge's analysis, he basically asked him two questions, straight questions. Did you falsely claim to be a U.S. citizen? He said, yes, twice. And the statutory section goes to whether you're trying to get a benefit. And as we noted, a benefit is the entry into the United States. So by those admissions, he had created a statutory bar to him ever being admitted into the United States. He can never get into the United States again. What about Ms. Bader's argument about credibility? Would you respond to that, please? I'd like to. Ms. Bader cites a number of issues claiming that an immigration officer stated that he should just go along with the program to be deported. I would note, if you look, the district court judge, as noted previously, made a credibility determination. That's at the record at 491, the excerpt of the record. The key issue, and I think if you look at the language, is, number one, that he was convicted twice, subsequently, of making false claims to U.S. citizenship. But also, if you look at the temporal sequence in this case, this went on for over eight months. The first declaration submitted by the defendant at 362 to 363 in the record, he made no mention whatsoever of any statements to him by immigration officers, any statements that he should just go along with the program and be deported. If you look, the first time that comes up is at 479 to 483 in the record. On January 6th, as he's heading into the hearing, he submits a handwritten declaration where the initial paragraphs are basically to the effect that, I've been thinking back, and during that deportation proceeding, do you know what happened? And then he lists this kind of panoply of claims that he was misinformed by immigration officers. So you're looking at a six-month time period from the initial motion, which was filed in July, to January of 2006, and now a switch in his stories. And if you look at Judge Moskowitz's specific statement, he uses the term recantation, and that's what it was. He basically had presented what his factual basis was,  and also the issue that clearly has to factor into that is, and he notes it specifically, we put it in our papers, he flatly admits to committing perjury, or at least that's his allegation, in front of the immigration judge. And he actually uses the term perjury. So Judge Moskowitz is presented with a situation where we have a person who's claiming, well, I perjured myself under oath, I switched my story in declarations, and I have multiple convictions later of doing the exact thing that I'm claiming. I didn't do that. And under the plain error standard, I don't believe that there's any way that Judge Moskowitz's analysis of his credibility can be reversed. What about Ms. Bader's argument that we need more than just a nipsey-dixit? I find this person not credible. Well, he has more. At 491, he basically analyzes that there's a change in the defendant's story, that he was convicted of the exact thing that he's claiming that he didn't do, and that he had basically admitted to committing or alleged to committing perjury previously. So Judge Moskowitz sets forth three separate bases to say, I don't find you credible at this point, and I think each one of those is sufficient. Do you have any concern about the ‑‑ first of all, we have to follow U.S. v. Scott in that the ruling that we're talking about is reviewable, even though it was to an indictment that was superseded. But the notice of appeal is not from the judgment. You've noticed that. The notice of appeal is not from the judgment. The notice of appeal is from the earlier interim ruling. And then on top of that, the record shows that this gentleman waived his right to appeal the judgment. Now, if he waived his right to appeal the judgment, and he, of course, did not appeal the judgment, the judgment is still there. And what we're doing is we're considering the correctness or erroneousness of an interim ruling, and when we get all done here, what do you have? A deal with this defendant that somehow confers jurisdiction on the court pursuant to Scott, and then we don't know what's going to happen to the judgment. We're not going to reverse the judgment. We're not going to touch it. Am I right? Your Honor, I felt I hadn't thought of that argument, and I think you probably would be correct on that. So we're going to decide whether or not it was correct or not to deny the motion to dismiss an indictment that's been superseded and rendered nothing, wasn't convicted under that indictment, convicted under an information, right? Correct. And waived the right to appeal the judgment, and here we are in the midst of this. Now, what difference does it make? I realize that Scott said it, but Scott, I hope, was appealed from a judgment or some other final order, but the order that we're talking about was never final, never ripened into a judgment ever, right? Your Honor, quite frankly, I'm not sure how that would fit into the parameters of Scott. Without looking at it closely, I'd be happy to submit a 28-J letter on that, to look at it because I don't want to provide off-the-cuff analysis. I haven't looked at Scott in a while to see what the circumstances are of that. So I'd be happy to provide the court, if the court wishes, with an analysis. I don't know whether Scott was literally the notice of appeal was from the judgment or not, but our jurisdiction is by statute either judgment or some final order of some sort. Correct. And I'm just unsure whether Scott would apply to a case where the judgment was based on the conditional plea. So I wouldn't want to give the court— But you have a judgment against this man and a sentence that he cannot appeal because he waived it. He did. Yes, that's correct. And we did preserve our rights. If we send the district court a reversal, what's the deal? What's going to happen to the judgment? You know? No, Your Honor. Quite frankly, I couldn't provide you with that. I'd be happy if the court would like to spend some time and brief that issue. As I understand it, the government is not arguing lack of jurisdiction or a mootness in this case. No, Your Honor. Correct, because we believe under merits it's clear. The defendant hasn't been able to establish any basis other than the flat statutory bar. If you look at the other claims, there's the expert issue I'd like to point out, since I'm running out of time on a quick issue. Expert was not raised in the initial appeal. Oh, I know. And so under Smith v. Marsh, it's waived. But I'd note, if you look at the 28J submission that was submitted last week, it's fairly lengthy. And quite frankly, in violation of the appellate rules, the only thing that they're asking for the expert is to opine as to whether there's a visa application out there. Well, defense had... What sort of burden did the defense, what sort of burden did the appellant have on that? They bear the burden of proving that the appeal, excuse me, that the deportation was invalid. They bear the burden of proving that they were prejudiced by it. Now, they had, Judge Moskowitz, and if you look at the record, gave the defense approximately eight months to find the information necessary to raise that issue. And defense had access to the A-files, had access to the people who were involved, and I'd point out that one of their very arguments was that they were somehow duped by an immigration person who never filed any documents. So there was nothing on the record in front of Judge Moskowitz. If you look at his order, that's one of the things he points out. There's nothing on the record that shows that there was any visa. But again, one need not even get to the visa issue because the false claims before the immigration judge are themselves sufficient for the statutory bar. And I'd note the second issue that we raised on that is related. He waived the appeal at the immigration court. And under the Murrow-Inkland and the related cases, the only way to challenge that and the way they challenged it is that the immigration judge should have advised him of some way of avoiding deportation. But the key to those cases is that there must be a means of avoiding deportation raised on the record. And there was none because based on his own statements under oath, there was no way he could be allowed into the United States under 212A6C2. So the waiver is valid, which Judge Moskowitz also found. So our position is that there is no means of attacking that deportation and it should stand. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Leavy, Callahan